IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARC G. CRAVEN,

                      Plaintiff,                        OPINION & ORDER

    v.

                                                              12-cv-524-wmc

SHERIFF DAVID MAHONEY and
JENNIFER FRISQUE,

                      Defendant.

---

In this civil action, *pro se* plaintiff Marc G. Craven contends that defendants Sheriff David Mahoney and Jennifer Frisque, staff members at the Dane County Jail ("DCJ"), were deliberately indifferent to his need for mental health treatment and deprived him of soap and toilet paper, each in violation of the Eighth Amendment. Both defendants have moved for summary judgment on Craven's claims against them. (Dkt. ##18, 20.) For reasons discussed more fully below, the court will grant both motions for summary judgment and dismiss Craven's case in its entirety.

UNDISPUTED FACTS

Craven failed to file any response to either defendant's motion for summary judgment in this case. Accordingly, the court deems the following facts, taken from defendants' proposed findings, to be undisputed.

Plaintiff Marc Craven was an inmate in the DCJ for several months in 2012. Defendant David Mahoney is the Sheriff of Dane County. Defendant Jennifer Frisque is a licensed clinical social worker with a master's degree concentrating on mental health.

I. **Booking into Dane County Jail**

On April 19, 2012, Craven was booked into the DCJ. Upon intake, he was immediately assessed by Anne O'Brien, a licensed social worker. During his mental health screening, Craven admitted that he had attempted suicide by overdose about two weeks earlier. His assessment as a whole indicated that Craven had significant mental health issues, including suicidal tendencies. O'Brien's notes also indicate that Craven has been in and out of jail a number of times and made other documented suicide attempts while incarcerated.

Based on this background and because he met the requisite criteria, Craven was housed in a classification known as "administrative confinement" or "AC." Craven's classification criteria also resulted in a recommendation that he be placed in full restraints and accompanied by two deputies when he was moved within the jail system.

Craven was initially housed in the 623 Cellblock, where jail security staff can observe inmates either directly or via security camera for suicidal activity. Craven did not have other cellmates at the time.

II. **Mental Health Treatment**

Within a few days of Craven's April 19th intake, psychiatrist Dr. Dennis Brightwell saw Craven. Based on their interaction, defendant Frisque developed the first of several mental treatment plans for Craven, which was consistent with standards developed by the National Commission on Correctional Health Care (NCCHC), a national accreditation organization that has reviewed and endorsed DCJ's policies and services. The plan included "intensive mental health monitoring" with "daily supportive counseling with mental health

staff." The goal was to reduce the services Craven needed so that he could control his behavior on his own.

DCJ records indicate that despite this plan, Craven made several representations that he intended to cause harm to himself and actually did so on several occasions. Specifically, during the months he was incarcerated at DCJ, Craven expressed suicidal ideation and attempted to hang himself on June 24, 2012; threatened to harm himself on numerous occasions; refused to eat for long periods of time pursuant to hunger strikes; and engaged in self-inflicted physical injuries, such as forcefully banging his head against the wall. Craven's suicidal statements and acts led security and mental health staff members to take various measures, including confining him for observation, supervising him constantly and performing regular evaluations of his mental health status. Because of his changing status, health staff frequently evaluated Craven's mental health on a daily basis. Regardless of his status, they also visited him daily to evaluate his risk of suicide, although medical records indicate that Craven often refused to speak with the health services staff. At times, Craven would also be placed in a suicide smock for his own protection.[1]

In the three months between Craven's booking on April 19 and his filing of this lawsuit on July 25, 2012, Dr. Brightwell evaluated Craven five different times. During those same three months, Frisque developed and implemented four different treatment plans for him, consistent with Dr. Brightwell's directions.

III. Hygiene in Administrative Confinement

While on "special watch" status, inmates are provided with toilet paper whenever they request it for toilet purposes, but jail staff report that inmates may use toilet paper to

---

[1] The smock is a tear-resistance cloak held together with Velcro, but it is not restrictive in any way.

obscure the lens of a security camera, preventing jail staff from keeping them under observation. (*See* Sgt. Michael Statz Aff. (dkt. #21) ¶ 8.) In fact, on May 9, 2012, Craven actually did cover the lens of his cell's security camera with toilet paper and attempted to cover the observation window of his cell with a jail blanket. He tried to do so again on June 26, 2012, using his feces and a piece of toilet paper. Thus, while Craven was on special watch status, the toilet paper he received was limited "to six squares" and provided only at those times when he needed it to use the bathroom.

Bars of soap are also frequently employed by inmates on special watch status to soap up camera lenses and observations windows, so as to obscure jail staff's view of the inmate. Even though Craven was on special watch status, however, he still received a "shower in a bag" kit, handi-wipes, a foam toothbrush and toothpaste for his hygiene needs.

**IV. Grievances**

Beginning in May of 2012, up until he filed his complaint on July 25, Craven filed and appealed several grievances, which can be organized into six general categories:

- Smock use based on an inmate's suicidal thoughts (Grievance No. 14749 with appeal);

- Lack of soap and toilet paper in jail cell (Grievance No. 14711 with appeal);

- Housing in AC rather than a different cell block (Grievance No. 14647 with appeal);

- Policy of moving Craven using full restraints and two deputies (Grievance No. 14761 with appeal);

- Limited television use while in AC (Grievance Nos. 14750, 14772 and 14811 with appeals); and

- Lack of hair clippers or razors while in AC (Grievance No. 14909 with appeal).

(*See* Nicholas C. Harken Aff. Ex. I (dkt. #26-9).)

None of Craven's grievances from April 19 until July 25, 2012, claim that he was denied mental health care or that he received inadequate health care. Indeed, the only grievance even tangentially related to his mental health care is Grievance No. 14749, in which Craven complained that the DCJ would use a suicide smock simply because he was having suicidal thoughts, even if he did not intend to act on them. The jail staff responded by citing the jail's Security Services Policy 613.02, which requires "all jail staff to be alert to indications that a prisoner is a possible suicide risk" and "to minimize the likelihood of suicide attempts by prisoners."

## OPINION

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party has informed the court of the basis for his or her motion, the nonmoving party must produce "evidence . . . such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If he fails to do so, "[t]he moving party is 'entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

I. **Frisque's Motion for Summary Judgment**

   A. **Administrative Exhaustion**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of this requirement is to "give the prison administrators a fair opportunity to resolve the grievance without litigation," *Shaw v. Jahnke*, 607 F. Supp. 2d 1005, 1007 (W.D. Wis. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006)). In the Seventh Circuit, exhaustion of administrative remedies is a "condition precedent to suit." *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002); *see also Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (holding that where administrative remedies have not been exhausted, "the district court lacks discretion to resolve the claim on the merits"). Furthermore, "[s]ection 1997e(a) says that exhaustion must precede litigation." *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Failure to properly exhaust requires dismissal.

Here, Craven filed a number of grievances during his time at the DCJ. It is undisputed, however, that none of the grievances he filed between April 19, 2012, and the commencement of this lawsuit dealt with an alleged systemic denial of his requests for mental health treatment, which is the alleged basis of his claim against Frisque in this suit. (*See* Frisque's PFOF (dkt. #25) ¶ 25.) The only grievance that makes any mention of Craven's mental health needs or treatment is Grievance No. 14749, which takes issue with DCJ staff's use of the suicide smock but does not allege, or even suggest, that he was systemically denied mental health treatment. Nor does it contend that the mental health

6

treatment he received *in general* was so inappropriate as to constitute deliberate indifference to his serious mental health needs. Grievance No. 14749, therefore, cannot be said to have exhausted Craven's administrative remedies with respect to his Eighth Amendment claim for denial of mental health treatment. Thus, Craven's remedies remain unexhausted, and the court lacks the discretion to address his claim for denial of mental health care on the merits. *Perez*, 182 F.3d at 536. That claim will be dismissed without prejudice.

In screening Craven's complaint, the court noted that Craven had also complained about the use of a suicide smock. While denying him leave to proceed on a separate conditions of confinement claim based on the smock, the screening order stated that Craven's claims for inappropriate use of the suicide smock "appear to fall within his deliberate indifference claim." (Oct. 2, 2013 Opinion & Order (dkt. #6) 7.) Unlike his general claim for failure to provide adequate mental health treatment, Craven did file a grievance complaining of the use of the suicide smock, and he appealed its denial. (*See* Nicholas C. Harken Aff. Ex. I (dkt. #26-9) 1-4.) Thus, while any Eighth Amendment claim for overall *denial* of mental health care is unexhausted and must be dismissed, a narrower claim premised on the allegedly inappropriate use of the suicide smock appears to have survived the PLRA's exhaustion requirement. Accordingly, the court proceeds to address that claim on the merits.

### B. Smock-Based Deliberate Indifference Claim

A claim for deliberate indifference to medical needs requires: (1) an objectively serious medical need; and (2) deliberate indifference to that need on the part of the defendant, meaning that she actually knew of a substantial risk of serious harm to Craven

7

but disregarded that risk. *See Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 258-60 (7th Cir. 1996). For the purposes of summary judgment, Frisque concedes that Craven's mental health problems and suicidal tendencies constitute an objectively serious medical need, meaning only the subjective element of deliberate indifference is at issue.

Here, Craven's surviving claim is premised on allegedly *inappropriate* treatment, rather than failure to provide treatment at all. In such cases, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (alteration in original) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). Thus, "[a] medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain*, 512 F.3d at 894-95).

Frisque has produced mental health progress notes to support her contention that Craven was occasionally "smocked" for his own protection. (*See* Nicholas C. Harken Aff. Exs. E-F (dkt. #26-5, -6).) According to those notes, Craven was smocked when other mental status indicators suggested he was in danger of harming himself. (*See, e.g., id.* at Ex. F (dkt. #26-6) 4 (smocked; suicidal ideation and plan); *id.* at 8 (smocked; suicidal ideation, working on a plan); *id.* at 9 (smocked; suicidal ideation, mild agitation, depressed and irritable mood); *id.* at 10 (smocked based on previous day's ideation; refusal to engage); *id.* at 19 (smocked; placed there due to measuring sheet in cell to the ceiling).) On some

8

occasions, Craven would remain smocked for a few additional days after suicidal ideation. (*See id.* at 13-14.)

In light of this undisputed evidence, the use of the smock was not so significant a departure from professional judgment as to allow for a finding of deliberate indifference. In fact, based on the context of this case, it is possible, if not likely, that the *failure* to employ a smock (or to take other affirmative steps to protect Craven from himself) could have opened up DCJ staff to liability. *See Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001) (prison officials are required to take reasonable steps to prevent an inmate from committing suicide when they are aware the inmate may imminently seek to take his own life). When an inmate like Craven with a documented history of mental health problems and suicide attempts informs jail staff that he is suicidal, "that alone should [be] enough to 'impute awareness of a substantial risk of suicide.'" *Id.* at 737-38 (quoting *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)). Thus, once Craven alerted DCJ staff and Frisque to his suicidal ideation, their decision to use a smock to prevent him from committing suicide was at least arguably reasonable and cannot be second-guessed by the court absent compelling evidence and a definitive, controlling legal opinion to the contrary. Frisque is, therefore, entitled to summary judgment on this claim as well.

## II. Mahoney's Motion for Summary Judgment

As a preliminary matter, the court has already found that Craven has failed to exhaust his administrative remedies with respect to his claim for a systemic denial of mental health care. Accordingly, the claim against Mahoney in his official capacity premised on

9

that theory must necessarily be dismissed without prejudice pending exhaustion of administrative remedies.[2]

Remaining is Craven's conditions of confinement claim against Mahoney in his official capacity, predicated on the denial of toilet paper and soap while in AC. To succeed on a conditions of confinement claim under the Eighth Amendment, Craven must show a deprivation that is sufficiently serious as to "result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Under the amendment, life's necessities include . . . hygiene items." *Gillis v. Litscher,* 468 F.3d 488, 493 (7th Cir. 2006). Thus, a lack of sanitation can violate the Eighth Amendment. *Id.*

Unfortunately for Craven, the undisputed facts in this case do not support a finding of a Eighth Amendment violation here. Mahoney has presented uncontroverted evidence in the form of an affidavit from Sergeant Michael Statz, an Administrator at the DCJ, that while inmates are given only six squares of toilet paper at a time while on "special watch," they can be provided with additional toilet paper "whenever they request it for toilet purposes." Likewise, inmates on "special watch" are not given soap but *are* apparently given handi-wipes, a foam toothbrush, toothpaste and a "shower in a bag" kit for hygiene

---

[2] Mahoney's statement in his brief that "[t]he sole claim against Dane County Sheriff David Mahoney is that he was responsible (in his *official* capacity) for denying the plaintiff basic needs during his incarceration" is not quite correct. The court's screening order granted Craven leave to proceed on his deliberate indifference claim against Mahoney for a systemic failure to provide mental health care. (*See* Oct. 2, 2013 Opinion & Order (dkt. #6) 5, 9.) Consistent with this misconception, Mahoney's motion for summary judgment deals only with the conditions of confinement claim against him. However, because the record now shows that Craven filed *no* grievances related to the systemic denial of mental health care, and because Craven was on notice by virtue of Frisque's motion that he would have to come forward with all of his evidence with respect to exhaustion of that claim, the court concludes the deliberate indifference claim against Mahoney for a systemic mental health care failure must be dismissed without prejudice.

purposes. These policies, which prevent access only to bar soap and *unlimited* toilet paper, simply do not rise to the level of an Eighth Amendment violation. *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel"). Given that DCJ policies allowed for more toilet paper upon request, as well as alternative personal hygiene products, Mahoney is entitled to summary judgment on this claim as well.

ORDER

IT IS ORDERED that:

1) Defendant Jennifer Frisque's motion for summary judgment (dkt. #20) is GRANTED.

2) Defendant Sheriff David Mahoney's motion for summary judgment (dkt. #18) is GRANTED.

3) The Clerk of Court is directed to enter judgment and close this case.

Entered this 18th day of November, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge